UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22473-CIV-HIGHSMITH/MCALILEY

LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON,

       Plaintiff,

    v.

CYNTHIA MILLER,  INDIVIDUALLY, AND IN HER
CAPACITY AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF RENNIE HARVEY MILLER,
DECEASED, AND IN HER CAPACITY AS PARENT,
CUSTODIAN, AND GUARDIAN OF N.R.E.M, A
MINOR UNDER THE AGE OF 18; AND DALE
THOMAS,

       Defendants.

_____/

ORDER GRANTING CYNTHIA MILLER'S MOTION
FOR SUMMARY JUDGMENT ON CROSS & COUNTER-CLAIMS

THIS CAUSE is before the Court upon the Motion for Summary Judgment on Cross-

Claim and Counter-Claim (the "Motion") filed by Defendant/Cross-Claimant Cynthia Miller

("Mrs. Miller") [DE 21].  For the reasons stated herein, Mrs. Miller's Motion is GRANTED.

FACTS

Mrs. Miller was married to Rennie Miller (the "Decedent") from 1996 to February 20,

2003.  (Miller's Mot. to Supplement Statement of Undisputed Facts ¶ 1 [hereinafter "Mot. to

Supplement"].)  In 2000, the Decedent and Mrs. Miller had a child together, ("N.R.E.M.").

(Def.'s Mot. for Summ. J. ¶ 2 [hereinafter "Def.'s Mot."].) Mrs. Miller and the Decedent

eventually divorced and, on February 20, 2003, entered into a Settlement Agreement. (Mot. to Supplement ¶ 3.)  The Settlement Agreement provided that the Decedent was to "maintain life insurance coverage in a minimum amount $100,000.00 on his life naming the minor child as his beneficiary either directly or in trust . . ." so long as is possible.  (Id.)  The obligation was to continue until the child turned 18 or was emancipated.  (Id.)  N.R.E.M., the child, is currently 11-years-old and is not emancipated.  (Id. at ¶ 5.)

On January 1, 2004, Liberty Life Assurance Company of Boston ("Liberty") issued a group life insurance policy (the "Policy") to Royal Carribean, the Decedent's employer.  (Def.'s Mot. ¶ 3.) The policy provided the Decedent with group life insurance coverage.  (Id.)  The Decedent originally had  $81,000 in insurance coverage, pursuant to the Policy.  (Id. ¶ 4.)

At some point, the Decedent and Mrs. Miller were remarried.  (Mot. to Supplement ¶ 6.) The remarriage, however, was short-lived, and on December 3, 2004, the Decedent filed for divorce from Mrs Miller, yet again, in the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Family Division.  (Def.'s Mot. ¶ 7.)  On or about December 7, 2004, the Decedent made Dale Thomas ("Thomas"), who was identified as a friend, the primary beneficiary on his insurance policy.  (Id. at ¶ 8.)  N.R.E.M., the Decedent's son, was designated as a contingent beneficiary.  (Id.)

On September 14, 2005 the divorce between the Decedent and Mrs. Miller was finalized. (Id. at ¶ 9.)  And, on October 20, 2005, the Decedent removed $40,500 from his insurance policy as an accelerated death benefit, leaving $40,500 to be payable at death.  (Id. at ¶ 10.)  The

Decedent, knowing he was sick, then decided to execute a Durable Power of Attorney, naming

Mrs. Miller as his attorney-in-fact.  (Id. at ¶ 11.)  Mrs. Miller thereafter changed the named

beneficiary on the Decedent's insurance policy to read "Estate of Rennie Miller."  (Id. at ¶ 12.)

Nine days later, the Decedent died.  (Id. at ¶ 13.)

### Procedural Background

Liberty filed the instant action for statutory interpleader and declaratory relief, seeking

a declaration from this Court determining entitlement to the insurance proceeds payable by

reason of the Decedent's death.  Mrs Miller then filed her cross- and counter-claims against

Defendant Thomas and Plaintiff Liberty[1].  Mrs. Miller now seeks summary judgment declaring

that the Estate of the Decedent is entitled to the proceeds of the Decedent's insurance policy.

### Analysis

A summary judgment is permitted where viewing the facts in the light most favorable

to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party

is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56.  Here, both parties have

conceded all material facts and agree that the disposition of the case rests on a decision as to

judgment as a matter of law.  (Responsive Pleading of Def. Dale Thomas 5.)  The following issues

must be resolved in order to determine whether this court should grant summary judgment in

favor of Mrs. Miller: (A) whether the decedent was obligated to maintain his life insurance and

to continue to name his son as the beneficiary of the life insurance; (B) whether the power of

---

[1]Liberty was subsequently dismissed from this action by consent of the parties.

attorney must expressly authorize Mrs. Miller to change the beneficiary on the life insurance

policy for Mrs. Miller to do so; and, if the power of attorney does have to expressly authorize

Mrs. Miller, (C) whether the power of attorney entered into by the Decedent and Mrs. Miller

give Mrs. Miller the right to change beneficiaries.

> (A) The Decedent May Have Been Required to Maintain His Life Insurance and
> to Continue to Name His Son as Beneficiary of that Life Insurance.

Where a final judgment in dissolution of marriage provides that a husband shall maintain

an insurance policy in which the minor child is the direct or indirect beneficiary of the policy,

the minor child becomes the owner of the policy upon husband's death, notwithstanding

husband's purported change in designated primary beneficiary to another person.  Pensyl v.

Moore, 415 So.2d 771, 772-73 (Fla. 3rd DCA 1982).  Here, the divorce settlement between the

Decedent and Mrs. Miller required the Decedent to "maintain life insurance coverage in a

minimum amount $100,000.00 on his life naming the minor child as his beneficiary either

directly or in trust . . ." so long as is possible.  (Mot. to Supplement ¶ 3.)  The obligation was to

continue until the child turned 18 or was emancipated.  (Id.)  The child is currently 8-years-old

and is not emancipated.  (Id. at ¶ 5.)  So, even though the Decedent changed the named

beneficiary so that Ms. Thomas would receive the proceeds of the insurance policy (Def.'s Mot.

¶ 8), the change was ineffective.  Pensyl, 415 So.2d at .

Initially, Ms. Thomas objected to this legal conclusion stating that the re-marriage of the

Decedent and Mrs. Miller nullified the prior judgment requiring the Decedent to maintain the

insurance policy for his son.  (Thomas' Resp. to Miller's Reply in Supp. of Her Mot. for Summ. J. and in Opp'n to Thomas' Mot. for Summ. J. 3 [hereinafter [Thomas' Resp."].)  Since, Mrs. Miller has pointed out that the case law supporting this assertion, Delgado v. Lopez, 546 So.2d 1075 (Fla. 3d DCA 1989), was expressly disapproved by Cox v. Cox, 659 So.2d 1051 (Fla. 1995), and Ms. Thomas has conceded that the law dictates that  judgment should be granted in favor of Mrs. Miller.  (Thomas' Reply to Miller's Pleading Styled: "Def. Miller's Mot. to File Reply to Thomas' [sic] Resp. Re: Summ. J. Mot." 1-2 [hereinafter Thomas' Reply].)

However, Mrs. Miller's statement that Delgado was expressly disapproved by Cox , (Def.'s Mot. to File Reply to Thomas' Resp. Re; Summ. J. Mot. 1-2 [hereinafter Def.'s Mot. to File Reply]), is misleading.  Cox clarified the stated rule in Delgado and other similar cases distinguishing between executed terms in a marital settlement agreement and executory terms. Cox v. Cox, 659 So.2d 1051, 1053-54 (Fla. 1995).  Cox states that remarriage abrogates the executory provisions of a prior marital settlement agreement, but does not abrogate the executed provisions.  Id.

Accordingly, if the Decedent and Mrs. Miller remarried after the Decedent sought coverage from the life insurance policy, then (because both parties concede that judgment as a matter of law should be granted in favor of Mrs. Miller, and the law does, in fact, support Mrs. Miller's argument) summary judgment would be granted in favor of Mrs. Miller.  On the other hand, if the decedent and Ms. Miller remarried prior to the initiation of the life insurance policy, then the contract term is executory, and the re-marriage of the Decedent and Mrs. Miller

nullified the prior judgment requiring the Decedent to maintain the insurance policy for his son. The record facts in this case, however, fail to specify when the Decedent and Mrs. Miller remarried--they merely state that they sought a divorce in December 2004. (Def.'s Mot. ¶ 7.) The Court, however, needs not reach this issue because alternate grounds exist to resolve the motion for summary judgment.

> (B)The Power of Attorney had to Expressly Authorize Mrs. Miller to Change the Beneficiary on the Decedent's Insurance Policy for the Change to be effective.

An attorney in fact has full authority to perform., without prior court approval, every act authorized and specifically enumerated in the durable power of attorney. §709.08(7)(a). An attorney-in-fact, however, may not amend or modify any document or other disposition effective at the principal's death unless expressly authorized by the power of attorney to do so. §709.08(7)(b)(5). Therefore, an attorney in fact may not change the named beneficiary on an insurance policy unless expressly authorized to do so by the power of attorney. Spoerr v. Manhattan Natl. Life Ins. Co., 2007 WL 128815 (S.D. Fla. 2007). But cf. Hunter v. Travelers Ins. Co., 131 So.2d 209, 210 (Fla. 2d DCA 1961) (stating that the naming of a beneficiary is an act taking effect, not upon the death of the insured, but immediately, but applying it to whether a minor can receive coverage from an insurance policy). Therefore, in order for Mrs. Miller to have been authorized to change the named beneficiary on decedent's insurance policy, decedent would have had to authorize Mrs. Miller to do so through the power of attorney.

(C) The Power of Attorney Gives Mrs. Miller the Authority to Change the Beneficiary on the Decedent's Insurance Policy.

Construction of a durable power of attorney is a matter of law. <u>Spoerr v. Manhattan Natl. Life Ins. Co.</u>, 2007 WL 128815 (S.D. Fla. 2007). In construing a power of attorney the court must look at the language of the instrument in order to ascertain its object and purpose. <u>Id.</u> However, power of attorneys are strictly construed. <u>Id.</u> And, only the principal's intent is considered when construing the power of attorney, not the agent's intent. <u>Kotsch v. Kotsch</u>, 608 So.2d 879 (Fla. App. 2 Dist. 1992).

First, the Decedent intended to give broad powers to Mrs. Miller as his attorney-in-fact. Under paragraph 4 of the power of attorney, labeled "No Limitation on Attorney-In-Fact's Powers," the Decedent states that he "intend[s] to give [his] Attorney-in-Fact the fullest powers possible, including all powers set forth in Florida Statute Section 709.08 as now in effect or hereafter enacted, and [he] [does] not intend, by the enumeration of [his] Attorney-in-Fact's powers to limit or reduce them in any fashion." (Durable Power of Att'y ¶ 4.) Here, the Decedent expressed his desire to relay to Mrs. Miller all the powers that he could possibly give her. (<u>Id.</u>)

The Decedent specifically states that he intends to give her the full extent of powers under available pursuant to 709.08. (<u>Id.</u>) Among the powers available pursuant to 709.08, is the power to "amend or modify any document or other disposition effective at the principal's death." §709.08(7)(a). This power is only available if the decedent expressly authorized his

attorney in fact, Mrs. Miller, to use that power.  See §709.08(7)(a).  Therefore, the powers are available because he expressly states that he intends to give Mrs. Miller the full powers available under 709.08, (Durable Power of Att'y ¶ 4.), and the power to change beneficiaries under his insurance policy is one of the powers available under 7098.08.  §709.08(7)(a).

Furthermore, under the section entitled "Management and Contracting Powers," the Decedent expressly authorizes Mrs. Miller to alter, insure, and in any manner deal with any real or personal property tangible or intangible and any interest therein.  (Durable Power of Att'y ¶ E.)  He further authorized Mrs. Miller under this same section to improve, manage and insure intangible property that he owns "upon such terms and conditions as the Attorney in Fact shall deem proper."  (Id.)  And, under section P, "Special," the Decedent declares that he gives his attorney in fact the full power of substitution, in other words, the full power to do and perform every act necessary and convenient to be done as if he were still personally present.  (Durable Power of Att'y ¶ P.)

The Decedent clearly intended to give his attorney-in-fact, Mrs. Miller, the full extent of the powers that he could give her.  The Decedent granted Mrs. Miller the "fullest powers possible" pursuant to Florida Statute Section 709.08, which he did not intend to limit by enumerating further power.  Therefore, his intent was clear, and strictly construing this contract, we must conclude that the Decedent intended to authorize Mrs. Miller to be able to change the named beneficiary on the insurance policy.  Because there is no genuine issue of material fact and the law indicates that Mrs. Miller was authorized to change the named

beneficiary on the Decedent's insurance policy, summary judgment shall be granted in favor of Mrs. Miller and the Estate of the Decedent is entitled to the proceeds of the Decedent's insurance policy.

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that the Defendant/Cross-Claimant Cynthia Miller's Motion for Summary Judgment [DE 21] is GRANTED. The proceeds of the Decedent's insurance policy with Liberty are to be released to Estate of Rennie Miller.

DONE AND ORDERED in Chambers, at Miami, Florida this <u>29th</u> day of November, 2007.

_____
SHELBY HIGHSMITH
UNITED STATES DISTRICT JUDGE

cc:     Counsel of Record